UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DMITRIY A. DIMOV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09-CV-211 |
| | ) | Chief Judge Curtis L. Collier |
| EMC MORTGAGE CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Before the Court are four separately filed motions to dismiss, filed individually by defendants EMC Mortgage Corporation ("EMC") (Court File No. 5), CitiFinancial ("CitiFinancial") (Court File No. 14), EquiTitle, Inc. ("EquiTitle") (Court File No. 21), and 1st Mariner Bank ("1st Mariner") (Court File No. 33). To the first of these motions, which was filed by EMC (Court File No. 5), Plaintiff Dimitriy A. Dimov ("Plaintiff") filed a response to EMC's motion to dismiss (Court File No. 8). Plaintiff did not file a response to the other three motions to dismiss. All four of these motions are now ripe for a decision.

For the following reasons, the Court will **GRANT** defendants' four motions to dismiss (Court File Nos. 5, 14, 21, and 33) and **DISMISS** this case for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

**I.     FACTS**

In 2005, Plaintiff signed a promissory note with 1st Mariner on real property located in Cleveland, Tennessee (Court File No. 8 at 2).[1] Beginning in February 2006, Plaintiff began receiving monthly demands for repayment on this promissory note from EMC (Court File No. 3 at 6). These demands were delivered through the United States mail, and continued to be delivered to Plaintiff from EMC every month until July 2009 (*id.*). Between February 2006 and July 2009, a total of fifty-three demands were sent to Plaintiff (*id.*). EMC, however, has never been in possession of the original, unaltered, endorsed promissory note originally executed with 1st Mariner (Court File No. 8 at 2). Though EMC asserted it was the lawful owner of the promissory note on Plaintiff's property in its demands for payment (Court File No. 3 at 6), EMC never proved it was the lawful holder of the promissory note, despite multiple requests from Plaintiff that it do so (Court File No. 8 at 2).

In August 2009, EMC conducted a foreclosure on Plaintiff's property using a forged deed of trust (Court File No. 3 at 2, 6; Court File No. 8 at 2). This evidence of indebtedness was manufactured by EMC acting in conjunction with unidentified parties (Court File No. 3 at 2, 6). Plaintiff's property was sold through this foreclosure to New York Bank Mellon (Court File No. 8 at 2).

The remainder of the amended complaint poses legal arguments regarding the duty of the United States Attorney to enter an appearance in this case (*see generally id.*). In addition, other than in the caption, the complaint never mentions by name CitiFinancial, EquiTitle, or 1st Mariner (*see*

---

[1] These are the facts viewed in the light most favorable to Plaintiff. In his response to EMC's motion to dismiss, Plaintiff supplemented factual allegations in the complaint with some additional details (*see* Court File No. 8 at 2). As discussed below, given the liberal pleading standard in cases filed *pro se*, the Court will consider these additional factual allegations and construe them, along with the amended complaint, in the light most favorable to Plaintiff.

*id.*). From this, Plaintiff asserts the defendants, including various John and Jane Does, have committed violations of "section 4 of the Clayton Act," and, as part of a civil RICO claim, the predicate acts of mail fraud and extortion.

## II. STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept the complaint's factual allegations as true, *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007), and determine whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, pleadings drafted by a litigant proceeding *pro se* are held to "less stringent standards" than those drafted by lawyers. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), but that statement must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a motion to dismiss, the question is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). At the same time, bare assertions of legal conclusions are insufficient, and the "complaint must contain either direct or inferential allegations respecting all the material elements

to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

In ruling on a motion under Rule 12(b)(6), the Court generally "may not consider matters beyond the complaint." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). In this case, however, some of the factual allegations on which Plaintiff relies are asserted for the first time in Plaintiff's response to EMC's motion to dismiss (Court File No. 8). Given the liberal construction the Court is required to give a *pro se* complaint, the Court concludes it is proper to consider those allegations raised by Plaintiff for the first time in the response. *See Garrett v. Belmont County Sheriff's Dept.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. 2010) ("Liberal construction of *pro se* complaints can include additional allegations set forth in objections to the magistrate judge's R&R at the discretion of the district court and this Court.") (citing *Ratliff v. United States*, 999 F.2d 1023, 1026 (6th Cir. 1993); *Sellers v. Morris*, 840 F.2d 352, 355 (6th Cir. 1988)). Therefore, the Court will construe as true all of Plaintiff's factual allegations, whether found in the amended complaint (Court File No. 3) or Plaintiff's response to EMC's motion to dismiss (Court File No. 8).

### III. DISCUSSION

As an initial matter, the Court notes Plaintiff has alleged no facts whatsoever against defendants CitiFinancial and EquiTitle. Other than being named in the caption, these defendants' names do not appear anywhere in Plaintiff's amended complaint or his response (Court File Nos. 3, 8). In addition, though Plaintiff does refer to 1st Mariner in his response, Plaintiff's only allegation is he signed a promissory note with 1st Mariner sometime in 2005 (Court File No. 8 at

4

2). Plaintiff makes no other factual allegations against 1st Mariner. Because there is no specific allegation CitiFinancial, EquiTitle, and 1st Mariner were involved in the events giving rise to Plaintiff's claims, the Court concludes Plaintiff has failed to state any claim against these three defendants.[2] Accordingly, all claims against CitiFinancial, EquiTitle, and 1st Mariner will be dismissed. As detailed above, however, Plaintiff does make several factual allegations against EMC and the unnamed defendants "John & Jane Does 1-20." Therefore, the Court must consider whether these factual allegations are sufficient to state a claim. In this case, Plaintiff asserts EMC and the unidentified defendants are liable under "section 4 of the Clayton Act" and civil RICO. The Court will consider these two claims individually.

### A. Clayton Act

Plaintiff's first claim falls under the Clayton Act. Section four of the Clayton Act "provides a private right of action when a person is 'injured in his business or property by reason of anything forbidden in the antitrust laws.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 432 (6th Cir. 2008) (quoting Clayton Act § 4, as codified in 15 U.S.C. § 15). To state a claim under the Clayton Act, however, a plaintiff must first demonstrate he possesses "antitrust standing." *In re Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 944 (E.D. Tenn. 2008) (citing *NicSand, Inc. v. 3M Company*, 507 F.3d 442, 450 (6th Cir. 2007)). "Antitrust standing is a threshold, pleading stage inquiry and a complaint must be dismissed if it fails to establish this requirement." *Id.* "An antitrust claimant must show more than merely an 'injury casually linked' to a competitive practice;

---

[2]In addition to a motion under Rule 12(b)(6), 1st Mariner argues it should also be dismissed as a party, because 1) Plaintiff has failed to effectuate service of process under Rule 4(m), after multiple Court orders that he do so, and 2) because this Court lacks personal jurisdiction over 1st Mariner Bank. Because the Court concludes Plaintiff fails to state a claim as to 1st Mariner, the Court does not reach these additional issues.

5

it 'must prove an antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.'" *NicSand*, 507 F.3d at 450 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Moreover, "a naked assertion of antitrust injury, without factual allegations plausibly suggesting (not merely consistent with) the same, are insufficient to meet the threshold requirement of Rule 8(a)(2)." *Southeastern Milk*, 555 F. Supp. 2d at 944 (citing *NicSand*, 507 F.3d at 451).

In this case, apart from referencing the Clayton Act, Plaintiff makes no mention whatsoever to the antitrust laws under which he claims an injury, nor does Plaintiff make any factual allegations which would allow the Court to infer which specific antitrust prohibition EMC allegedly violated. In other words, Plaintiff merely makes a "naked assertion of antitrust injury," which is insufficient to state a claim. *See id.* Therefore, Plaintiff's claim under section four of the Clayton Act will be dismissed. *See* Fed. R. Civ. P. 12(b)(6).

### B. RICO

Plaintiff's second claim falls under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* Pursuant to § 1964, a plaintiff may assert a private right of action for treble damages against any person who "injured his business or property by reason of a violation of 18 U.S.C. § 1962." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 513 (6th Cir. 2010). Each of the four subsections of § 1962 carries a different prohibition. *See* § 1962(a)–(d). Though Plaintiff does not distinguish under which among these four prohibitions he asserts his claim, the Court concludes he fails to assert a claim under any of the four.

#### 1. Sections 1962(a) & (b)

Under § 1962(a), it is unlawful for any person to "use income derived from a 'pattern of racketeering activity' to acquire an interest in or establish operation of any enterprise engaged in, or the activities of which affect, interstate commerce." *Riverview*, 601 F.3d at 513. Under § 1962(b), it is unlawful for any person, "through a pattern of racketeering activity, [to] acquire or maintain an interest in or control of any enterprise engaged in, or the activities of which affect, interstate commerce." *Riverview*, 601 F.3d at 513.

To state a civil claim under § 1962(a), a plaintiff must allege an injury to business or property stemming directly from the defendant's alleged use or investment of the racketeering proceeds; an injury caused by the alleged racketeering activities themselves is insufficient. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir. 1990). Similarly, to state a claim under § 1962(b), a plaintiff must allege an injury caused by the acquisition of an interest in the targeted enterprise, not merely an injury caused by the alleged predicate acts. *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 329 (6th Cir. 1999).

In this case, the only injury alleged by Plaintiff was the loss of his real property (Court File No. 3 at 2). Plaintiff alleges EMC illegally foreclosed on his real property and sold the property to a third party (Court File No. 8 at 2). Plaintiff alleges this foreclosure was conducted through racketeering activity (*id.*). However, Plaintiff does not allege he received any additional injury caused by the use or investment of the proceeds from this foreclosure, or by the acquisition of an enterprise, as required by §§ 1962(a) & (b). Therefore, Plaintiff has failed to state a claim under either of these subsections.

**2. Section 1962(c)**

Section 1962(c) makes it unlawful for any person, associated with an enterprise, to conduct or participate in the conduct of that enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). To state a claim under § 1962(c), a plaintiff must plead four elements: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). Unlike the first two subsections, however, a plaintiff under section § 1962(c) may recover from injuries traceable only to the alleged predicate acts. *Craighead*, 899 F.2d at 494.

### a. Person-Enterprise Distinction

To establish the first two elements, a plaintiff stating a civil claim under § 1962(c) must allege two separate entities: the "person" engaged in illegal conduct and the "enterprise" whose affairs are being illegally conducted. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Section 1961(4) defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Alleging the existence of a "legal entity" enterprise, such as a partnership or corporation, is relatively straightforward. Alleging the existence of an "association in fact" enterprise, however, is more difficult.

An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). In *Boyle v. United States*, 129 S.Ct. 2237 (2009), the United States Supreme Court recently clarified the standard for demonstrating an association-in-fact enterprise. Under *Boyle*, an association-in-fact enterprise requires at least three structural features: 1) "a purpose;" 2) "relationships among those associated with the enterprise;" and 3) "longevity sufficient to permit these associates to pursue the

8

enterprise's purpose." *Id.* at 2244. However, "an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages" is not necessary. *Id.* For example, an association-in-fact enterprise does not have to have a hierarchical structure or formal process for making decisions. *Id.*

Because § 1961(3) defines a "person" as including "any individual or entity capable of holding a legal or beneficial interest in property," a corporation may be either a person or an enterprise under § 1962(c). Pursuant to the requirement of "distinctness," however, the person and the enterprise may not be the same entity. *Begala v. PNC Bank*, 214 F.3d 776, 781 (6th Cir. 2000); *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir. 1989); *Cedric*, 533 U.S. at 161. Therefore, if a plaintiff alleges a corporation is a RICO enterprise, then that plaintiff cannot simultaneously allege that corporation is also a person illegally engaged in racketeering activity. *Begala*, 214 F.3d at 781; *Puckett*, 889 F.2d at 1489. In other words, pursuant to the distinctness requirement, a corporation cannot create an association-in-fact enterprise by "join[ing] with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself." *Begala*, 214 F.3d at 781. However, because the corporation is a distinct legal entity, a plaintiff may allege the corporation is itself an enterprise and one or more of its employees or agents is the person who violated § 1962(c), by conducting the affairs of the corporation through a pattern of racketeering activity. *Cedric*, 533 U.S. at 163.

Finally, in a civil case under § 1962(c), the proper defendant will be the person alleged to have illegally conducted the enterprise's affairs. *Begala*, 214 F.3d at 781. For example, in cases where the alleged enterprise is a corporation, the corporation itself cannot be held directly liable under § 1962(c), because it cannot simultaneously be deemed a person under the statute. *Begala*,

214 F.3d at 781. Moreover, the corporation cannot be held vicariously liable for the racketeering activity of its employees and agents, because imposing vicarious liability would circumvent and violate the distinctness requirement imposed by the statute. *Davis v. Mutual Life Ins. Co. of N.Y.*, 6 F.3d 367, 379 (6th Cir. 1993). Therefore, in cases where the corporation is the alleged enterprise, the corporation cannot be held liable under § 1962(c). *Id.*

In this case, it is not clear what legal entity or association-in-fact Plaintiff alleges to be an enterprise under § 1962(c). The possibilities appear to be those whom Plaintiff has identified as defendants in this case–EMC, CitiFinancial, EquiTitle, 1st Mariner, and "John Does & Jane Does 1-20"–as no other individuals or entities are referenced in the amended complaint or elsewhere. As discussed above, however, Plaintiff does not reference CitiFinancial and EquiTitle beyond the caption of this case, and, though Plaintiff does reference 1st Mariner, it is only to assert he signed a promissory note with 1st Mariner sometime in 2005. Thus, the Court finds no indication Plaintiff has alleged CitiFinancial, EquiTitle, or 1st Mariner is the enterprise under § 1962(c), because Plaintiff has alleged no facts which suggest the affairs of these entities were illegally conducted.

This leaves defendant EMC and the John and Jane Doe defendants. Drawing from this pool, it is unclear whether Plaintiff alleges EMC is the legal entity acting as an enterprise, or whether he alleges a group including both EMC and some or all of the John and Jane Doe defendants are an association-in-fact enterprise. In fact, Plaintiff appears at different points to assert a claim under both theories.

At one point, Plaintiff seems to allege all of the defendants, including EMC, are part of an association-in-fact enterprise.[3] In support of this, however, Plaintiff alleges no details concerning the three structural elements required for an association-in-fact enterprise. *See Boyle*, 129 S.Ct. at 2244. For example, Plaintiff makes no allegations concerning the relationship among the members of the alleged association-in-fact. *See id.* (stating "relationships among those associated with the enterprise" is a necessary structural feature of an association-in-fact). Indeed, other than EMC, Plaintiff does not even identify the alleged association-in-fact's members. This omission is critical, because whether the alleged association-in-fact's members are employees of EMC is determinative of whether their association constitutes an enterprise. As stated above, a corporation cannot join with its own employees and thereby create an association-in-fact, because such would violate the rule of distinctness, by allowing the corporation to be simultaneously the "person" and the "enterprise." *Begala*, 214 F.3d at 781. Thus, if the unidentified individuals whom Plaintiff alleges are part of an association-in-fact with EMC are employees or corporate agents of EMC, then no association-in-fact exists. *See id.*

Moreover, even if this were not the case, Plaintiff has alleged no facts from which this Court could conclude EMC and the unidentified actors were working together to defraud Plaintiff. Plaintiff merely alleges that an association-in-fact exists and nothing more. Plaintiff provides no details concerning its purpose, its membership, or its duration. As such, Plaintiff's assertion that a RICO association-in-fact exists is nothing more than a conclusion and a "formulaic recitation of the elements" for a RICO cause of action. *See Ass'n of Cleveland Fire Fighters v. City of Cleveland,*

---

[3]Plaintiff alleges "two or more of the defendants are members of an association in fact which affects interstate commerce . . . " (Court File No. 8 at 2).

*Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Thus, the existence of suitable § 1962(c) association-in-fact is purely speculative, and Plaintiff fails to state a § 1962(c) claim based on an association-in-fact theory of an enterprise. *See id.*

At another point, however, Plaintiff suggests EMC by itself is the enterprise.[4] As a legal entity, EMC easily satisfies the definition of an enterprise. *See* § 1961(4). If this is Plaintiff's theory of the case, however, EMC cannot be held liable for the racketeering activity conducted on its behalf, either directly or vicariously, because doing so would violate the rule of distinctness. *See Davis*, 6 F.3d at 379. Therefore, Plaintiff does not state a § 1962(c) claim against EMC based upon the enterprise theory, either, and Plaintiff's § 1962(c) claim against EMC as a whole must be dismissed.

However, the distinction requirement does not affect Plaintiff's claims against the John and Jane Doe defendants, whom Plaintiff alleges are the "persons" who illegally conducted EMC's affairs through a pattern of racketeering activity. *See Cedric*, 533 U.S. at 163 (stating corporate employee can be held liable under § 1962 where corporate employer is the enterprise). Therefore, the Court must still consider whether Plaintiff has alleged these unidentified defendants conducted or participated in a pattern of racketeering activity, in violation of § 1962(c).

### b. Pattern of Racketeering Activity

"Racketeering activity" is defined as acts that constitute a violation of various state and federal criminal laws, including mail fraud, wire fraud, and extortion. § 1961(1). A "pattern of racketeering activity" is defined as "at least two acts of racketeering activity" within a ten-year

---

[4]According to Plaintiff, "In naming EMC Mortgage Corporation, [Plaintiff] has established that an enterprise exists which undeniably affects interstate commerce." (Court File No. 3 at 3).

period. § 1961(5). In this case, Plaintiff alleges the defendants committed the predicate acts of mail fraud and extortion.

Merely pleading two predicate acts is insufficient, however, because "the term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity. It is this fact of continuity plus relationship which combines to produce a pattern." *H.J., Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 238 (1989). "Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects itself into the future with a threat of repetition." *Id.* at 240. Continuity over a closed period of time may be demonstrated "'by proving a series of related predicates extending over a substantial period of time.'" *Moon*, 465 F.3d at 724 (quoting *H.J., Inc.*, 492 U.S. at 242). A single, fraudulent scheme to accomplish a single objective does not establish RICO continuity, however, because there is no threat of future criminal conduct. *Id.* at 725-26 (citing *H.J., Inc.*, 492 U.S. at 242).

In *Moon*, the plaintiff alleged a civil claim under § 1962(c), asserting a pattern of racketeering activity resulted when the defendants "embarked upon a coordinated scheme to wrongfully terminate his workers' compensation benefits." *Id.* at 725. The Sixth Circuit concluded, however, the alleged scheme lacked the required continuity.

> All of the predicate acts–the mailing of the [fraudulent notices] cutting off his benefits and the mailing of the [doctor's] fraudulent medicate report–were keyed to [the defendants'] single objective of depriving [the plaintiff] of his benefits. No other schemes, purposes, or injuries [were] alleged, and there [were] no facts suggesting that the scheme would continue beyond the [defendants] accomplishing their goal of terminating [the plaintiff's] benefits. In circumstances such as these, the purported racketeering activity does not bear the markings of the "long-term criminal conduct" about which "Congress was concerned" when it enacted RICO.

*Id.* at 725-26 (quoting *H.J., Inc.*, 492 U.S. at 242).

13

In this case, Plaintiff's alleged predicate acts involve allegations of mail fraud and extortion. Assuming *arguendo* the facts alleged establish these predicate acts, Plaintiff has failed to establish the "requisite RICO continuity," because there is no suggestion of future criminal activity. *See id.* As in *Moon*, all of the predicate acts alleged by Plaintiff–the mailing of fraudulent payment demands and notices of foreclosure, the threats of foreclosure, the manufacturing false evidence of indebtedness, and even the foreclosure itself–were keyed to the single objective of depriving Plaintiff of his property. *See id.* Though Plaintiff alleges "the pattern of fraud, mail fraud, and extortion is likely to continue unless abated" (Court File No. 8 at 2), Plaintiff offers no facts to support such an allegation. As such, it is again an example of a "formulaic recitation of the elements" for a RICO cause of action, and is insufficient to state a claim. *See Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555).

Therefore, Plaintiff has failed to state a claim under § 1962(c) against any defendant, including the unidentified John and Jane Does.

### 3. Section 1962(d)

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of" the other subsections of § 1962. Because the other claims under RICO must be dismissed, however, Plaintiff's conspiracy claim likewise cannot stand. *Craighead*, 899 F.2d at 495. Moreover, Plaintiff fails to allege the existence of an agreement among the predicate actors. Therefore, though Plaintiff makes the conclusive allegation that the defendants "conspired," he has failed to allege a necessary element for a claim of conspiracy. *See id.* Finally, as discussed above, because Plaintiff does not identify the actors of the alleged conspiracy other than EMC, it is impossible to conclude a plausible conspiracy exists, because "a company cannot conspire with its

14

corporate affiliates or employees." *See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991); *Fogie v. Thorn Americas, Inc.*, 190 F.3d 889, 898 (8th Cir. 1999); *Williamson v. Ocwen Loan Servicing, LLC*, No. 3:09-CV-0514, 2009 WL 5205405, at *5 (M.D. Tenn. Dec. 23, 2009). For these reasons, Plaintiff fails to state a claim under § 1962(d) against any defendant.

## IV. CONCLUSION

For the reasons above, the Court concludes Plaintiff has failed to state a claim upon which relief can be granted against any defendant. *See* Fed. R. Civ. P. 12(b)(6). Accordingly, defendants EMC, CitiFinancial, EquiTitle, and 1st Mariner's separate motions to dismiss (Court Files No. 5, 14, 21, 33) will be **GRANTED** and this case will be **DISMISSED**.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**